FILED

OCT 3 0 2007   NF

OCT. 30, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JH

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT KNOWLES<br><br>Plaintiff,<br><br>v.<br><br>ANGELIA HOPSON; RENEWABLE RESOURCES, LLC; AND SAFETY SOLUTIONS, INC.<br><br>Defendants. | 07CV 6131<br>JUDGE MORAN<br>MAGISTRATE JUDGE COLE<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Robert Knowles ("Knowles") files this Complaint against Angelia Hopson ("Hopson"); Renewable Resources, LLC ("Renewable"); and Safety Solutions, Inc. ("Safety") as follows.

### JURISDICTION AND VENUE

1.

Knowles is a resident of the State of Georgia.

2.

Hopson is a resident who resides within the State of Illinois and is subject to the personal jurisdiction of this Court. Hopson may be served at 799 Roosevelt Road, Building 3, Suite 215, Glen Ellyn, Illinois.

3.

Renewable is an Illinois limited liability company that is subject to the personal jurisdiction of the Court. Renewable may be served through Hopson, who is Renewable's manager, or through its registered agent, Emmitt C. House, 208 S. LaSalle St., Suite 1462, Chicago, Illinois.

4.

Safety is an Illinois corporation that is subject to the personal jurisdiction of the Court. Safety may be served through Hopson, who is Renewable's president, or through its registered agent, Carlos E. Nardo, 799 Roosevelt Road, Building 3, Suite 215, Glen Ellyn, Illinois.

5.

This Court has subject matter jurisdiction of this action, as it involves the diversity jurisdiction of the Court and as it involves claims arising under the laws of the United States, including 15 U.S.C. § 77(a), et. seq. This Court also has supplemental subject matter jurisdiction of the state common law and statutory claims asserted in this action.

6.

Venue is proper in this District and Division under 28 U.S.C. § 1391(b), because all of the Defendants reside herein and because a substantial part of the events giving rise to the claims asserted herein occurred in this District and Division.

## GENERAL BACKGROUND

7.

Upon information and belief, Hopson owns a majority interest in both Renewable and Safety, and, at all times hereafter, Hopson was acting on her own behalf and on behalf of Renewable and Safety.

8.

During October 2006, Knowles was introduced to Hopson.

9.

Hopson thereafter attempted to solicit an investment into Renewable from Knowles. Hopson told Knowles in general terms that Renewable was attempting to pursue a venture that involved a tire recycling project that was to be centered in the Memphis, Tennessee area.

10.

During the last few days of October, Hopson and Knowles met in San Diego, California, at which time, they discussed the venture in more specific terms. Hopson had Knowles sign a non-disclosure agreement, and Hopson told Knowles that she had more than $500,000.00 in her own money invested in Renewable, and that if Knowles invested into Renewable, his monies would be used to help further fund Renewable's attempts to conduct the tire-recycling venture.

11.

Upon information and belief, contrary to Hopson's representations, she had not invested $500,000 of her money in Renewable.

12.

Moreover, at the time that Hopson represented that Knowles' investment would be used to further fund Renewable's attempts to conduct the tire-recycling venture, Hopson did not have the present intent to use Knowles' investment for that purpose. Instead, Hopson wanted and needed Knowles' money to pay her debts associated with Safety, another of Hopson's companies.

13.

There were other similar discussions between Hopson and Knowles, which culminated in the signing of a letter agreement (the "December Letter"), a copy of which is attached hereto as **Exhibit "A,"** on or about December 8, 2006, in Memphis.

14.

The December Letter recognized that Knowles was making a $250,000 investment into Renewable in exchange for 5% of Renewable and that the formal documents concerning this investment would be completed by January 31, 2007.

15.

Knowles did make the $250,000 investment into Renewable. He paid Renewable $50,000 by check on or about December 10, 2006, and he caused to be sent a wire transfer in the amount of $200,000 on or about December 29, 2006.

16.

Unbeknownst to Knowles and contrary to the representations by Hopson, at the time that Knowles made his original $50,000 payment to Renewable, Renewable did not have any cash at the time.

17.

Moreover, only three days after Renewable deposited Knowles $50,000 check, Hopson caused Renewable to withdraw $49,000 of that money by writing a check in that amount to Safety.

18.

Within weeks of Knowles' wire transfer, Hopson caused Renewable to withdraw nearly all of the rest of Knowles' investment by writing checks to Safety. Specifically, Renewable wrote checks to Safety in the amounts of $100,000 on January 1, 2007; $50,000 on January 8, 2007; $20,000 on January 16, 2007; $20,000 on February 1, 2007; and $3,000 on February 8, 2007.

19.

Upon information and belief, there was no consideration to Renewable for those monies, and the monies were not used to further Renewable's venture; instead, they were used to pay other debts that Hopson had previously incurred in connection with Safety.

20.

Throughout this, other than the December Letter, Hopson never provided Knowles with a registration statement or any prospectus.

21.

Despite Hopson's promises to have the documents in connection with Knowles' investment completed by the end of January 2007, none of the Defendants have yet to provide Knowles with these documents.

22.

Although Knowles invested in Renewable during 2006, Renewable never provided Knowles with a K-1 form for 2006.

23.

Since January of this year, Knowles has made repeated requests of Hopson and Renewable for the K-1 form and the investment documents, but Defendants have failed to provide these.

24.

Defendants have also refused to provide all of the pertinent financial documents in connection with Renewable and with the transfers from Renewable

to Safety, even though Hopson demanded that Knowles sign—and Knowles did sign—another non-disclosure agreement in July 2007.

25.

During September 2007, Defendants did provide a few documents to Knowles on Renewable. These documents showed Knowles for the first time that Hopson had made major misrepresentations and omitted materially important information from Knowles.

26.

The documents given to Knowles by Defendants contradict Hopson's claim that she put $500,000 into Renewable. The documents also show that Hopson almost immediately drained all of Knowles' investment and that Hopson has used part of the little remaining money in Renewable to pay Hopson's personal expenses. The bank statements indicate that Hopson used Renewable's bank account to make purchases at a GNC drug store, to pay for her own gas use, bookstores, and to make "ATM" cash withdraws.

27.

Almost as importantly, the documents provided to Knowles by Defendants indicate that Hopson left Renewable unable to pay for those expenses that may have been legitimately attributable to Renewable.

28.

Upon information and belief, Renewable has not registered its offering of securities.

## COUNT I: VIOLATION OF FEDERAL SECURITIES LAW

Knowles incorporates by reference the allegations of Paragraphs 1 - 28, as if fully restated herein.

29.

Defendants' conduct constitutes multiple violations of the securities laws of the United States, 15 U.S.C. § 77(a), et. seq.

30.

Knowles is entitled to rescind any agreements with Defendants, and is entitled to a refund of his investment, plus interest.

31.

Alternatively, Knowles has suffered damages as a result of Defendants' conduct, and Defendants are liable for those damages.

32.

Defendants are also liable to Knowles for his expenses of litigation and costs, plus any statutory damages.

**COUNT II: VIOLATION OF ILLINOIS SECURITIES LAW**

Knowles incorporates by reference the allegations of Paragraphs 1 - 32, as if fully restated herein.

33.

Defendants' conduct constitutes multiple violations of the Illinois Securities Law of 1953, 815 ILCS 5/1, et. seq.

34.

Knowles elects to void his investment and the agreements signed in connection with that investment.

35.

Knowles is entitled to a refund of his investment, plus interest.

36.

Alternatively, Knowles has suffered damages as a result of Defendants' conduct, and Defendants are liable for those damages.

37.

Defendants are also liable to Knowles for his expenses of litigation and costs, plus statutory damages.

**COUNT III: COMMON LAW FRAUD**

Knowles incorporates by reference the allegations of Paragraphs 1 - 37, as if fully restated herein.

38.

Defendants knowingly made material misrepresentations to Knowles and knowingly concealed material facts from Knowles.

39.

Defendants' fraudulent misrepresentations and concealments were made with a present and knowing intention that they were false.

40.

Knowles justifiably relied on Defendants' misrepresentations and was unaware of Defendants' concealments.

11

41.

Knowles was damaged by Defendants' fraudulent conduct in an amount to be proven at trial, but in an amount at least equal to his investment, plus interest.

42.

Defendants acted maliciously and willfully. Knowles is thus also entitled to recover punitive damages from Defendants in an amount to be assessed in the enlightened conscience of the jury in order to deter Defendants from similar future misconduct, but in an amount that should be no less than $1,000,000.

43.

Defendants acted in bad faith, fraudulently and have caused Knowles unnecessary trouble and expense. Knowles is also entitled to recover his expenses of litigation and costs from Defendants.

### COUNT IV: UNJUST ENRICHMENT

Knowles incorporates by reference the allegations of Paragraphs 1 - 43, as if fully restated herein.

44.

Defendants have wrongfully received benefits that, in equity, are the property of Knowles, or which should accrue to the benefit of Knowles, and

which equity requires that Defendants return to Knowles, and/or to compensate Knowles.

45.

Knowles is entitled to an order compelling Defendants to return any benefits received, to account for any profits or other benefits derived therefrom, and to compensate Knowles therefore, all as may be proven at trial and as the Court may equitably decree.

46.

Defendants have acted fraudulently and in bad faith, and Knowles is entitled to an award of attorney's fees, expenses of litigation, and costs.

### JURY DEMAND

Knowles demands a trial by jury as to all matters herein that are so triable.

### PRAYER FOR RELIEF

WHEREFORE, having stated his Complaint, Knowles respectfully requests:

(a)     that he recover actual, compensatory, statutory, and punitive damages from Defendants in an amount to be proven at trial;

(b) that he be awarded his attorney's fees, costs, and other expenses of litigation; and

(c) that the Court grant Knowles such other, further and different relief as the Court may deem just and proper.

Respectfully submitted this 29th day of October, 2007.

By: /s/ S. Bradley Shipe
S. Bradley Shipe

Wagner, Johnston & Rosenthal P.C.
5855 Sandy Springs Circle
Suite 300
Atlanta, GA  30328
(404) 261-0500

Attorneys for Plaintiff Robert Knowles



**Renewable Resources**

December 7, 2006

Mr. Robert Knowles
545 Cox Road
Roswell, GA 30775

Dear Mr. Knowles:

This letter is intended to memorialize the understanding between you and Renewable Resources, LLC (Renewable). As you know, we have been engaged in discussions concerning your investment of $250,000.00 in a venture (Venture), which Renewable is pursuing. The Venture is a tire recycling project in which Renewable will collect used and discarded tires from various sources to be recycled into useful products or as fuel for energy plants. As you are also aware, Renewable has been in discussions with various entities, including Wal-Mart, FedEx and UPS, among others, who have expressed a strong interest in supplying Renewable with tires for the Venture. In addition, Wal-Mart has expressed an interest in purchasing recycled tire products for resale or for use in its operations.

The Venture will require the negotiation and consummation of various definitive agreements with the aforementioned parties, as well as others, before actual operations may commence. In addition, the Venture will require a significant restructuring of Renewable and its corporate affiliates, Safety Solutions Inc. and the Compliance Group, LLC, to create the optimal business conditions for the Venture. It is expected that the company restructuring and finalization of the most important preliminary agreements should be completed by January 31, 2007.



EXHIBIT "A"

We have agreed that an infusion of capital into Renewable would considerably facilitate the company restructuring and conclusion of significant preliminary agreements with suppliers, vendors and others. Toward that end, you have agreed to invest the sum of $250,000.00 in Renewable in exchange for a 5% economic interest in Renewable, which is an Illinois LLC. You have agreed to make such an investment based upon the instant Letter Agreement with the understanding that detailed agreements and other paperwork concerning your investment will be completed by January 31, 2007.

I am excited about the prospects for the Venture and thoroughly delighted that you have the confidence in me and Renewable to make the investment previously discussed. I look forward to working with you and sharing the success of Renewable.

Very truly yours,

Angella Hopson
President

Agreed to and accepted this 8th day of December, 2006

Robert Knowles