IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

ROBERT KNOWLES,

    Plaintiff,

vs.

ANGELIA HOPSON; RENEWABLE
RESOURCES, LLC; AND SAFETY
SOLUTIONS, INC.

    Defendants.

Case No: 07 CV 6131
Judge Robert M. Dow Jr.
Courtroom 1919
Magistrate Judge Jeffrey Cole
Courtroom 1838

---

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

---

NOW COME Defendants, ANGELIA HOPSON, RENEWABLE RESOURCES, LLC, AND SAFETY SOLUTIONS, INC., by and through their attorneys, Gonzalez, Saggio and Harlan, L.L.C., and in answer to Plaintiff's Complaint, state as follows:

**JURISDICTION AND VENUE**

1.    Knowles is a resident of the State of Georgia.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in paragraph 1, and on that basis deny them.

2.    Hopson is a resident who resides within the State of Illinois and is subject to the personal jurisdiction of this Court. Hopson may be served at 799 Roosevelt Road, Building 3, Suite 215, Glen Ellyn, Illinois.

**ANSWER:**    Defendants admit that Hopson is a resident of the State of Illinois and may be served at the address indicated. Except as admitted, defendants state that the remaining allegations contained in Paragraph 2 call for assertions or legal conclusions and on that basis deny

them.

3. Renewable is an Illinois limited liability company that is subject to the personal jurisdiction of the Court. Renewable may be served through Hopson, who is Renewable's manager, or through its registered agent, Emmitt C. House, 208 S. LaSalle St., Suite 1462, Chicago, Illinois.

**ANSWER:** Defendants admit that Renewable is an Illinois limited liability company and that it may be served through Hopson or Emmitt House. Except as admitted, defendants Hopson and Renewable state that the remaining allegations contained in Paragraph 3 call for assertions or legal conclusions, and on that basis deny them. Safety makes no answer to the allegations contained in Paragraph 3 as the allegations are not directed to Safety, however, to the extent any allegations are deemed to be directed to Safety, in such instance Safety adopts the answer of Hopson and Renewable.

4. Safety is an Illinois corporation that is subject to the personal jurisdiction of the Court. Safety may be served through Hopson, who is Renewable's president, or through its registered agent, Carlos E. Nardo, 799 Roosevelt Road, Building 3, Suite 215, Glen Ellyn, Illinois.

**ANSWER:** Defendants Hopson and Safety admit that Safety is an Illinois corporation which may be served through its president, Hopson. Safety states that it may no longer be served through Carlos E. Nardo. Except as admitted, Safety states that the remaining allegations contained in Paragraph 4 call for assertions or legal conclusions and on that basis deny them. Renewable makes no answer to the allegations contained in Paragraph 4 as the allegations are not directed to Renewable, however, to the extent any allegations are deemed to be directed to Renewable, in such instance Safety adopts the answer of Hopson and Safety.

5. This Court has subject matter jurisdiction of this action, as it involves the diversity

jurisdiction of the Court and as it involves claims arising under the laws of the United States, including 15 U.S.C. § 77(a), et. seq. This Court also has supplemental subject matter jurisdiction of the state common law and statutory claims asserted in this action.

**ANSWER:** Defendants state that the remaining allegations contained in Paragraph 5 call for assertions or legal conclusions and on that basis deny them.

6. Venue is proper in this District and Division under 28 U.S.C. § 1391(b), because all of the Defendants reside herein and because a substantial part of the events giving rise to the claims asserted herein occurred in this District and Division.

**ANSWER:** Defendants admit that they are residents of Illinois. Except as admitted, defendants state that the remaining allegations contained in Paragraph 6 call for assertions or legal conclusions and on that basis deny them.

## GENERAL BACKGROUND

7. Upon information and belief, Hopson owns a majority interest in both Renewable and Safety, and, at all times hereafter, Hopson was acting on her own behalf and on behalf of Renewable and Safety.

**ANSWER:** Hopson and Safety admit that Hopson is a majority shareholder in Safety. Hopson and Renewable admit that Hopson possesses a majority interest in Renewable. Hopson and Safety deny that Hopson was acting on her own behalf with respect to Safety. Hopson and Renewable deny that Hopson was acting on her own behalf with respect to Renewable. Further answering, defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 7 because the term "at all relevant times" has not been defined, and on that basis deny them.

8.      During October 2006, Knowles was introduced to Hopson.

**ANSWER:**   Admitted.

9.      Hopson thereafter attempted to solicit an investment into Renewable from Knowles. Hopson told Knowles in general terms that Renewable was attempting to pursue a venture that involved a tire recycling project that was to be centered in the Memphis, Tennessee area.

**ANSWER:**   Hopson only admits that on behalf of Renewable, Hopson discussed with Knowles that Renewable was attempting to pursue a venture involving a tire recycling project to be centered in Memphis, Tennessee. Except as admitted, Hopson and Renewable state that the remaining allegations contained in Paragraph 9 call for assertions or legal conclusions and on that basis deny them. Safety makes no answer to the allegations contained in Paragraph 9 as the allegations are not directed to Safety, however, to the extent any allegations are deemed to be directed to Safety, in such instance, Safety adopts the answer provided by Hopson and Renewable.

10.     During the last few days of October, Hopson and Knowles met in San Diego, California, at which time, they discussed the venture in more specific terms. Hopson had Knowles sign a non-disclosure agreement, and Hopson told Knowles that she had more than $500,000 of in her own money invested in Renewable and that if Knowles invested into Renewable, his monies would be used to help further fund Renewable's attempts to conduct the tire-recycling venture.

**ANSWER:**   Hopson and Renewable admit that Hopson and Knowles met in October 2006 in San Diego, California at which time the tire recycling project was discussed. Admitted that Knowles signed a non-disclosure agreement although a form thereof was not appended to the complaint. Safety makes no answer to the allegations contained in Paragraph 10 as the allegations are not directed to Safety, however, to the extent any allegations are deemed to be directed to Safety,

in such instance, Safety adopts the answer provided by Hopson and Renewable.

11. Upon information and belief, contrary to Hopson's representations, she had not invested $500,000 of her money in Renewable.

**ANSWER:** Hopson and Renewable deny that Hopson represented that she had personally invested $500,000 of her own money in Renewable. Further answering, Paragraph 11 does not indicate which party allegedly was the recipient of the aforesaid representation. Safety makes no answer to the allegations contained in Paragraph 11 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 11 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson.

12. Moreover, at the time that Hopson represented that Knowles' investment would be used to further fund Renewable's attempts to conduct the tire recycling venture, Hopson did not have the present intent to use Knowles' investment for that purpose. Instead, Hopson wanted and needed Knowles' money to pay her debts associated with Safety, another of Hopson's companies.

**ANSWER:** Defendants deny the allegations contained in Paragraph 12.

13. There were other similar discussions between Hopson and Knowles, which culminated in the signing of a letter agreement (the "December Letter"), a copy of which is attached hereto as Exhibit "A," on or about December 8, 2006, in Memphis.

**ANSWER:** Hopson and Renewable lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13 because the phrase "similar discussions" is vague, and on that basis deny the allegations, except that Hopson and Renewable admit that Hopson, in her official capacity on behalf of Renewable, signed the December Letter which is appended as Exhibit "A" to the complaint. Safety makes no answer to the allegations contained in Paragraph 13

as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 13 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

14. The December Letter recognized that Knowles was making a $250,000 investment into Renewable in exchange for 5% of Renewable and that the formal documents concerning this investment would be completed by January 31, 2007.

**ANSWER:** Hopson and Renewable state that Exhibit "A" speaks for itself and, accordingly, admit the allegations of paragraph 14 only to the extent they are consistent with such document and deny those allegations to the extent they are inconsistent with such document. Safety makes no answer to the allegations contained in Paragraph 14 as the allegations are not directed to Safety, however, to the extent any allegations are deemed to be directed to Safety, in such instance, Safety adopts the answer provided by Hopson and Renewable.

15. Knowles did make the $250,000 investment into Renewable. He paid Renewable $50,000 by check on or about December 10, 2006, and he caused to be sent a wire transfer in the amount of $200,000 on or about December 29, 2006.

**ANSWER:** Hopson and Renewable admit that Knowles provided Renewable with a check on or about December 2006 and caused a wire transfer in the amount of $20,000 to be sent on or about December 29, 2006. Hopson and Renewable further state that the remaining allegations of Paragraph 15 call for an assertion or legal conclusion and on that basis deny them. Safety makes no answer to the allegations contained in Paragraph 15 as the allegations are not directed to Safety, however, to the extent any allegations are deemed to be directed to Safety, in such instance, Safety adopts the answer provided by Hopson and Renewable.

16. Unbeknownst to Knowles and contrary to the representations by Hopson, at the time that Knowles made his original $50,000 payment to renewable, Renewable did not have any cash at the time.

**ANSWER:** Hopson and Renewable admit that at the time that Knowles tendered his initial funds to Renewable, Renewable did not have any cash on hand. Hopson and Renewable lack knowledge or information sufficient to form a belief as to Knowles' state of mind and on that basis deny such allegation. Except as admitted, Hopson and Renewable deny the remaining allegations of Paragraph 16. Safety makes no answer to the allegations contained in Paragraph 16 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 16 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

17. Moreover, only three days after Renewable deposited Knowles $50,000 check, Hopson caused Renewable to withdraw $49,000 of that money by writing a check in that amount to Safety.

**ANSWER:** Admitted that Hopson in her official capacity caused Renewable to withdraw $49,000 from Renewable's account by writing a check to Safety.

18. Within weeks of Knowles' wire transfer, Hopson caused Renewable to withdraw nearly all of the rest of Knowles' investment by writing checks to Safety. Specifically, Renewable wrote checks to Safety in the amounts of $100,000 on January 1, 2007; $50,000 on January 8, 2007; $20,000 on January 16, 2007: $20,000 on February 1, 2007; and $3,000 on February 8, 2007.

**ANSWER:** Hopson and Renewable only admit that Hopson, in her official capacity, caused Renewable to make the withdrawals as indicated and Safety admits that it received the

7

checks as indicated. Further answering, defendants state that Safety provided consideration to Renewable in exchange for monies received from Renewable.

19. Upon information and belief, there was no consideration to Renewable for those monies, and the monies were not used to further Renewable's venture; instead, they were used to pay other debts that Hopson had previously incurred in connection with Safety.

**ANSWER:** Denied.

20. Throughout this, other than the December Letter, Hopson never provided Knowles with a registration statement or any prospectus.

**ANSWER:** Admitted by Hopson and Renewable. Safety makes no answer to the allegations contained in Paragraph 20 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 20 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

21. Despite Hopson's promises to have the documents in connection with Knowles' investment completed by the end of January 2007, none of the Defendants have yet to provide Knowles with these documents.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 21 because the phrase "the documents" is vague in that such phrase does not identify the particular documents referred to and on that basis, defendants deny such allegations.

22. Although Knowles invested in renewable during 2006, Renewable never provided Knowles with a K-1 form for 2006.

**ANSWER:** Hopson and Renewable admit that Knowles has not been provided with a K-

checks as indicated. Further answering, defendants state that Safety provided consideration to Renewable in exchange for monies received from Renewable.

19. Upon information and belief, there was no consideration to Renewable for those monies, and the monies were not used to further Renewable's venture; instead, they were used to pay other debts that Hopson had previously incurred in connection with Safety.

**ANSWER:** Denied.

20. Throughout this, other than the December Letter, Hopson never provided Knowles with a registration statement or any prospectus.

**ANSWER:** Admitted by Hopson and Renewable. Safety makes no answer to the allegations contained in Paragraph 20 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 20 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

21. Despite Hopson's promises to have the documents in connection with Knowles' investment completed by the end of January 2007, none of the Defendants have yet to provide Knowles with these documents.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 21 because the phrase "the documents" is vague in that such phrase does not identify the particular documents referred to and on that basis, defendants deny such allegations.

22. Although Knowles invested in renewable during 2006, Renewable never provided Knowles with a K-1 form for 2006.

**ANSWER:** Hopson and Renewable admit that Knowles has not been provided with a K-

1 form with respect to Renewable. Safety makes no answer to the allegations contained in Paragraph 22 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 22 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

23. Since January of this year, Knowles has made repeated requests of Hopson and Renewable for the K-1 form and the investment documents, but defendants have failed to provide these.

**ANSWER:** Hopson and Renewable admit that Knowles has requested a K-1 form. Hopson and Renewable lack knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 23 because the phrase "investment documents" is vague and does not make reference to particular documents and on that basis deny such allegations. Safety makes no answer to the allegations contained in Paragraph 23 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 23 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

24. Defendants have also refused to provide all of the pertinent financial documents in connection with Renewable and with the transfers from Renewable to Safety, even though Hopson demanded that Knowles sign – and Knowles did sign – another nondisclosure agreement in July 2007.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegation that defendants have failed to provide "all of the pertinent documents in connection with Renewable" as the phrase "all pertinent financial documents" is vague and on that basis, denies

same. Hopson and Renewable admit that Knowles signed another non-disclosure agreement on or about July 2007. Safety makes no answer to the remaining allegations contained in Paragraph 24 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 24 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

25. During September 2007, defendant did provide a few documents to Knowles on Renewable. These documents showed Knowles for the first time that Hopson had made major misrepresentation and omitted materially important information from Knowles.

**ANSWER:** Admitted that during September 2007, certain documents were provided to Knowles regarding Renewable. Hopson and Renewable deny the remaining allegations contained in Paragraph 25. Safety makes no answer to the allegations contained in Paragraph 25 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 25 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

26. The documents given to Knowles by Defendants contradict Hopson's claim that she put $500,000 into Renewable. The documents also show that Hopson almost immediately drained all of Knowles' investment and Hopson has used part of the little remaining money in Renewable to pay Hopson's personal expenses. The bank statements indicate that Hopson used Renewable's bank account to make purchases at a GNC drug store, to pay for her own gas use, bookstores, and to make "ATM" cash withdraws.

**ANSWER:** Defendants Hopson and Renewable deny the allegations contained in the first sentence of Paragraph 1. Defendants Hopson and Renewable admit that Knowles was provided

with documentation regarding expenditures. The documents referred to speak for themselves and, accordingly, defendants Hopson and Renewable admit the allegations of paragraph 26 only to the extent they are consistent with such documents and deny those allegations to the extent they are inconsistent with such documents. Hopson and Renewable further state that the expenses referred to in Paragraph 26 were incurred in Hopson's capacity as a member of Renewable. Hopson and Renewable further state that the remaining allegations of Paragraph 26 call for assertions or legal conclusions and on that basis, deny them.  Safety makes no answer to the allegations contained in Paragraph 26 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 26 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

27. Almost as importantly, the documents provided to Knowles by Defendants indicate that Hopson left Renewable unable to pay for those expenses that might have been legitimately attributable to Renewable.

**ANSWER:** Denied by Hopson and Renewable. Safety makes no answer to the allegations contained in Paragraph 27 as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 27 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

28. Upon information and belief, Renewable has not registered its offering of securities.

**ANSWER:** Admitted by Hopson and Renewable that Renewable has not registered any offering in connection with Renewable. Further answering, the allegations in contained in Paragraph 28 call for assertions or legal conclusions as to the requirement to register an offering of securities and on that basis, deny them. Safety makes no answer to the allegations contained in Paragraph 28

as the allegations are not directed to Safety, however, to the extent any allegations contained in Paragraph 28 are deemed to be directed to Safety, then in such instance, Safety adopts the answer provided by Hopson and Renewable.

## COUNT I

Knowles incorporates by reference the allegations of Paragraphs 1-28, as if fully restated herein.

**ANSWER:** Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1 -28, as if fully restated herein.

29. Defendants' conduct constitutes multiple violations of the securities laws of the United States, 15 U.S.C. § 77(a), et. seq.

**ANSWER:**

30. Knowles is entitled to rescind any agreements with Defendants, and is entitled to a refund of his investment, plus interest.

**ANSWER:** Denied.

31. Alternatively Knowles has suffered damages as a result of Defendants' conduct, and Defendants are liable for those damages.

**ANSWER:** Denied.

32. Defendants are also liable to Knowles for his expenses of litigation and costs, plus any statutory damages.

**ANSWER:** Denied.

## COUNT II

Knowles incorporates by reference the allegations of Paragraphs 1-32, as if fully restated

herein.

**ANSWER:** Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-32, as if fully restated herein.

33. Defendants' conduct constitutes multiple violations of the Illinois Securities Law of 1953, 816 ILCS 5/1, et.seq.

**ANSWER:** Denied.

34. Knowles elects to void his investment and the agreements signed in connection with that investment.

**ANSWER:** The statement contained in Paragraph 34 is not allegation directed to defendants and therefore defendants can provide no answer thereto, however, to the extent an answer is required, the allegations contained in Paragraph 34 are denied.

35. Knowles is entitled to a refund of his investment, plus interest.

**ANSWER:** Denied.

36. Alternatively, Knowles has suffered damages as a result of Defendants' conduct, and Defendants are liable for those damages.

**ANSWER:** Denied.

37. Defendants are also liable to Knowles for his expenses of litigation and costs, plus statutory damages.

**ANSWER:** Denied.

## COUNT III

Knowles incorporates by reference the allegations of Paragraphs 1-37, as if fully restated herein.

**ANSWER:**   Defendants incorporate by reference their responses to the allegations contained in Paragraph 1-37, as if fully restated herein.

38.   Defendants knowingly made material misrepresentations to Knowles and knowingly concealed material facts from Knowles.

**ANSWER:**   Denied.

39.   Defendants' fraudulent misrepresentations and concealments were made with a present and knowing intention that they were false.

**ANSWER:**   Denied.

40.   Knowles justifiably relied on Defendants' misrepresentations and was unaware of Defendants' concealments.

**ANSWER:**   Defendants deny making misrepresentations to Knowles. Defendants deny the remaining allegations contained in Paragraph 40.

41.   Knowles was damaged by Defendants' fraudulent conduct in an amount to be proven at trial, but in an amount at least equal to his investment, plus interest.

**ANSWER:**   Denied.

42.   Defendants acted maliciously and willfully. Knowles is thus also entitled to recover punitive damages from Defendants in an amount to be assessed in the enlightened conscience of the jury in order to deter Defendants from similar future misconduct, but in an amount that should be no less than $1,000,000.

**ANSWER:**   Denied.

43.   Defendants acted in bad faith, fraudulently and have caused Knowles unnecessary trouble and expense. Knowles is also entitled to recover this expenses of litigation and costs from

Defendants.

    **ANSWER:**   Denied.

## COUNT IV

Knowles incorporates by reference the allegations of Paragraphs 1-43, as if fully restated herein.

    **ANSWER:**   Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-43, as if fully restated herein.

44.    Defendants have wrongfully received benefits that, in equity, are the property of Knowles, or which should accrue to the benefit of Knowles, and which equity requires that Defendants return to Knowles, and/or to compensate Knowles.

    **ANSWER:**   Denied.

45.    Knowles is entitled to any order compelling Defendants to return any benefits received, to account for any profits or other benefits derived therefrom, and to compensate Knowles therefore, all as may be proven at trial and as the Court may equitably decree.

    **ANSWER:**   Denied.

46.    Defendants have acted fraudulently and in bad faith, and Knowles is entitled to an award of attorneys fees, expenses of litigation and costs.

    **ANSWER:**   Denied.

WHEREFORE, defendants pray as follows:

1.    That plaintiff take nothing by his complaint;

2.    That the complaint be dismissed with prejudice;

3.    That defendants be awarded their cots of suit, including reasonable attorneys' fees;

4.   That defendants have such other, further and different relief as this Court deems just and proper.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's complaint fails to allege facts sufficient to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any recovery from defendants because the company documents quoted and statements made on behalf of Renewable did not contain any untrue statement of material fact nor did they omit to state any material fact required to be stated or necessary to make the statements made not misleading.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any recovery from defendants because at all relevant times answering defendants acted diligently and reasonably and had a good faith belief in the truthfulness of each of the matters alleged in the complaint to be inaccurate and further believed that there was no failure to state a material fact alleged in the complaint to be omitted.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any recovery from defendants because the substance of the material information that it alleges to have been omitted or misrepresented was in fact disclosed.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any recovery from defendants because no act or omission of defendants was the cause in fact or the proximate cause of any damage to plaintiff.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any recovery because plaintiff did not exercise reasonable care to discover the facts relating to the alleged misstatements or omissions.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's complaint fails to plead fraud against each of the defendants with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

### EIGHTH AFFIRMATIVE DEFENSE

Every act or omission alleged in the complaint was done or omitted in good faith in conformity with the rules and regulations of the Securities and Exchange Commission and the Illinois Securities Laws and there is no liability for any act or omission so alleged.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff obtained an interest in Renewable with actual or constructive knowledge of the risks involved with respect to the allegations of the defendants and assumed the risk associated with such interest.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff would have obtained an interest in Renewable even with full knowledge of the facts that plaintiff is alleged to have misrepresented or omitted.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendants lacked the requisite scienter required for liability.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff did not rely upon the misrepresentations or misleading statements alleged.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no cognizable damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to assert additional affirmative defenses in the future which may become available upon further investigation, discovery, or other method.

WHEREFORE, defendants pray as follows:

1. That plaintiff take nothing by his complaint;

2. That the complaint be dismissed with prejudice;

3. That defendants be awarded their costs of suit, including reasonable attorneys' fees.

4. That defendants obtain such other, further and different relief as this Court deems just and proper.

<pre>                                        s/Vincent Vigil
                                        Vincent Vigil
                                        35 East Wacker Drive
                                        Suite 500
                                        Chicago, IL 60601
                                        Phone 312- 236-0475
                                        Fax    312-236-1750
                                        E-mail: vincent_vigil@gshllc.com</pre>

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: thiersch@gtpclaw.com and I certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Steven Bradley Shipe
Wagner, Johnston & Rosenthal, P.C.
5855 Sandy Springs Circle
Suite 300
Atlanta, GA 30328


s/Vincent Vigil
Vincent Vigil
35 East Wacker Drive
Suite 500
Chicago, IL 60601
Phone 312- 236-0475
Fax     312-236-1750
E-mail: vincent_vigil@gshllc.com